IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CAMDEN BARLOW, et al., :
    Plaintiffs :
: No. 1:18-cv-00716
    v. :
: (Judge Rambo)
WARDEN DAVID J. EBBERT, :
et al., :
    Defendants :

## MEMORANDUM

**I. BACKGROUND**

On April 3, 2018, the Court received and docketed a complaint filed pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), ostensibly by ten inmates currently incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania ("USP-Lewisburg"). (Doc. No. 1.) Plaintiffs provided that Plaintiff Railey "acts as the 'agent' and/or 'voice' of the group of Plaintiffs." (Id. at 8-9.) Named as Defendants are David J. Ebbert, the Warden at USP-Lewisburg, Officer Buebendorf, Special Institutional Security at USP-Lewisburg, and Officer Tharp, acting counselor for B-block at USP-Lewisburg. (Id. at 9.) Plaintiffs allege that they are housed in the Special Management Unit ("SMU"), and participate in a Secured Mental Health Step Down Program designed for inmates with disciplinary infraction issues. (Id. at 9.)

1

Plaintiffs claim that they are being discriminated against in violation of the Equal Protection Clause because they receive enhanced restrictions on their incoming and outgoing mail by virtue of their placement in the SMU. (Id. at 12.) Plaintiffs also allege a violation of their Fifth Amendment due process rights related to these enhanced mail restrictions, as well as violations of their First Amendment rights because they are unable to properly utilize the administrative grievance remedy procedure at USP-Lewisburg. (Id. at 13.) Concurrent with the filing of the complaint, Plaintiffs also filed a motion for a temporary restraining order ("TRO"), and preliminary injunction (Doc. No. 2), and motion to proceed as a "class action" pursuant to Federal Rule of Civil Procedure 23 (Doc. No. 3).

On April 23, 2018, a motion to amend the complaint was filed, requesting leave to add three additional Plaintiff's to the complaint: Doreteo Garcia, Juan Carlos Valles, and David Jackson. (Doc. No. 14.) On June 14, 2018, the Court granted Plaintiffs' April 23, 2018 motion insofar as it added the three aforementioned Plaintiffs to this action. (Doc. No. 28.) The Court dismissed without prejudice Plaintiffs Haynes, Argueta, and Piggee from this action for their failure to comply with the Court's April 18, 2018, 30 Day Administrative Order. (Id.) On June 20, 2018, Plaintiff David Jackson filed a motion to withdraw from this action. (Doc. No. 30.)

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), the Court performed its mandatory screening of the complaint prior to service. In its July 24, 2018 Screening Memorandum and Order, the Court denied Plaintiffs' motion to proceed as a class action, granted Plaintiff Jackson's motion to withdraw and dismissed him from the action, dismissed Plaintiffs Taylor, Holland, and Knott from the action without prejudice for failure to comply with the Court's April 18, 2018, 30 Day Administrative Order, and dismissed the complaint in part for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).[1] (Doc. Nos. 38, 39.) The Court directed service of the remaining Plaintiffs' First Amendment enhanced mail restriction claim on Defendants.[2] (Doc. No. 39.) The Court also directed Defendants to respond to Plaintiffs' motion for a preliminary injunction. (Id.)

On September 17, 2018, Plaintiff Wilson filed a motion pursuant to Federal Rule of Evidence 201, requesting that this Court inform him of all updates with regards to the instant action. (Doc. No. 63.) On September 18, 2018, the Court received a motion for leave to file an amended complaint (Doc. No. 65), by Plaintiff Railey, along with proposed amendments to the complaint (Doc. No. 66), and a brief in support (Doc. No. 67). Plaintiff Railey has also filed a motion for

---

[1] The specific claims that were dismissed were Plaintiffs' Equal Protection claim and First Amendment access-to-the-courts claim. (Doc. No. 39.)
[2] The remaining Plaintiffs in this action are Barlow, Wilson, Alvarez, Raiely, Valles, and Garcia.

3

reconsideration (Doc. No. 68), of this Court's July 24, 2018 Memorandum and Order (Doc. Nos. 38, 39). On September 20, 2018, Plaintiff Railey filed a motion to sever Plaintiff Wilson from this action. (Doc. No. 81.)

Defendants have filed their oppositional brief to Plaintiffs' motion for temporary restraining order on September 24, 2018. (Doc. No. 82.) Defendants have also filed a motion to stay the proceedings pending resolution of Plaintiffs' motion for leave to file an amended and supplemental complaint, and to extend the period within which to answer the complaint. (Doc. No. 83.)

## II. DISCUSSION

The Court will first address Plaintiffs' motion for preliminary injunction followed by the remaining pending motions.

### A. Motion for Preliminary Injunction

Preliminary injunctive relief is extraordinary in nature and is discretionary with the trial judge. Orson, Inc. v. Miramax Film Corp., 836 F. Supp. 309, 311 (E.D. Pa. 1993) (citing Skehan v. Bd. of Tr. of Bloomsburg State Coll., 353 F. Supp. 542 (M.D. Pa. 1973)). In determining whether to grant a motion seeking preliminary injunctive relief, courts in the Third Circuit consider the following four factors: (1) the likelihood that the applicant will prevail on the merits; (2) the extent to which the movant is being irreparably harmed by the conduct complaint; (3) the extent to which the non-moving party will suffer irreparable harm if the

preliminary injunction is issued; and (4) whether granting preliminary injunctive relief will be in the public interest. S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 374 (3d Cir. 1992) (citing Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 197-98 (3d Cir. 1990)). It is the moving party that bears the burden of demonstrating these factors. See Dorfman v. Moorhous, No. 93-cv-6120, 1993 WL 483166, at *1 (E.D. Pa. Nov. 24, 1993). "The relevant inquiry is whether the movant is in danger of suffering irreparable harm at the time the preliminary injunction is to be issued." SI Handling Sys., Inc. v. Heisley, 753 F.2d 1244, 1264 (3d Cir. 1985).

Moreover, "[t]he 'requisite feared injury or harm must be irreparable – not merely serious or substantial,' and it 'must be of a peculiar nature, so that compensation in money cannot atone for it.'" ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987) (quoting Glasco v. Hills, 558 F.2d 179, 181 (3d Cir. 1977)). "In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989). "The key word in this consideration is <u>irreparable</u>. . . . The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against

5

a claim of irreparable harm." Sampson v. Murray, 415 U.S. 61, 90 (1974) (emphasis in original). Moreover, "[t]he relevant inquiry is whether the movant is in danger of suffering irreparable harm at the time the preliminary injunction is to be issued." Heisley, 753 F.2d at 1264.

Plaintiffs complain that they are subject to enhanced mail restrictions because of their confinement within the SMU. (Doc. No. 2.) Plaintiffs seek a preliminary injunction to have Defendants cease the enhanced mail restrictions. (Id.) Defendants maintain that in addressing concerns related to the abuse of incoming general correspondence,[3] USP-Lewisburg "identified a small number of inmates whose incoming general correspondence is of special concern due to the inmate's history of severe mail abuse, introduction of contraband by mail, fraudulent financial activities and transactions, suspected introduction of narcotics, and the use of communications to aid in the introduction of contraband." (Doc. No. 82 at 5.) Pursuant to this enhanced mail monitoring:

> [T]he inmate's incoming general correspondence is initially processed through the institution mailroom and then is routed to SIS Technician S. Buebendorf. Once Buebendorf receives the inmate's incoming general correspondence from the mailroom, he photocopies it, and provides the photocopy to the inmate. Buebendorf then maintains the original correspondence for sixty days before destroying it. If there are personal photographs in the incoming general correspondence, they are placed in

---

[3] "'General correspondence' is defined as incoming [or] outgoing inmate mail sent or received via the U.S. Postal Service." (Doc. No. 82 at 3 n.2.)

> the inmate's personal property and the inmate is provided with an inventory of the photographs. The inmate has access to photographs once he completes the SMU program and transfers to another institution. When Buebendorm receives the inmate's mail from the mailroom, he generally photocopies it and provides the photocopy to the inmate the same day. When Buebendorm makes the photocopy, he does not alter any of the content; he simply photocopies the original piece of paper and provide[s] the photocopy to the inmate.

(Id. at 5-6.)

Defendants also provide that only one Plaintiff, Terrell Wilson, is presently subject to the enhanced mail monitoring. (Id. at 6.) Plaintiff's Barlow and Railey were previously subject to the enhanced mail monitoring procedures and Plaintiffs Alvarez, Garcia, and Valles have never been subject to the enhanced mail monitoring. (Id. at 7.) Regarding Plaintiff's Barlow, Railey, Alvarez, Garcia, and Valles, because they are either not subject to the enhanced mail monitoring procedures or have never been subject to them, their request for injunctive relief will be dismissed as moot. See Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698-99 (3d Cir. 1996); see also Heisley, 753 F.2d at 1264.

Regarding Plaintiff Wilson, the only named Plaintiff presently subject to the enhanced mail monitoring procedures, the Court finds that the demanding showing for this extraordinary form of relief has not been made. Initially, it has not been shown that Wilson is likely to prevail on the merits. With regard to an inmate's

First Amendment right, the Supreme Court has explained that this right is grounded in the opportunity to read the words written by the sender. Procunier v. Martinez, 416 U.S. 396, 408 (1974) (overruled in part on other grounds by Thornburgh v. Abbott, 490 U.S. 401 (1989) (written communication between two individuals "is not accomplished by the act of writing words on paper. Rather, it is effected only when the letter is read by the addressee. Both parties to the correspondence have an interest in securing that result").

As maintained by Defendants, the enhanced mail monitoring procedures do not affect Wilson's ability to correspond with community contacts. (Doc. No. 82 at 9.) Wilson has the ability to read the uncensored words of the addresser when the photocopy of the correspondence is provided, and Wilson also maintains the ability to respond to the content of the incoming correspondence. (Id.) Alternatively, even if the enhanced mail monitoring procedures encroach on Wilson's constitutional right, the Court finds that the procedures are valid, as they bear a reasonable relationship to a legitimate penological interest. See Turner v. Safley, 482 U.S. 78, 89 (1987) (setting forth four factors in determining the reasonableness of a regulation). First, there is a direct correlation between the enhanced mail monitoring procedures and the issues that the BOP has identified the procedures are to address. Those include "the increase in abuse involving tangible materials comprising the correspondence: the paper it is written on, the

8

envelope it is mailed in, and the stamps on the envelope." (Doc. No. 82 at 10.) The procedure allows the inmate to receive an unaltered photocopy of the incoming general correspondence which eliminates "the inmate's access to synthetic narcotics, contraband, and materials used to carry out fraudulent schemes that may be concealed within the tangible materials comprising the original piece of correspondence." (Id. at 11.)

Second, the inmates subject to the enhanced mail monitoring procedures are still able to exercise their First Amendment right to send and receive mail and associate with others. Third, the impact on BOP staff and other inmates in the absence of the enhanced mail monitoring procedures may have the effect of introducing synthetic narcotics, contraband, or fraudulent information concealed within the original correspondence into the institution, resulting in internal security and safety threats to other inmates and staff. Finally, the Court discerns no readily available alternatives that would ensure the safety of other inmates and staff while preserving Plaintiff's First Amendment right. The Court finds that these enhanced mail monitoring procedures are narrowly tailored to address a very specific concern and is applicable to a small number of inmates who have shown a history of severe mail abuse, introduction of contraband by mail, fraudulent financial activities and transactions, suspected introduction of narcotics, or used communications to aid in the introduction of contraband. (Id. at 12.)

The Court also does not find that the use of the enhanced mail monitoring procedures constitute irreparable injury. Wilson is being provided with an exact copy of his incoming general correspondence. (Id. at 12.) He has the ability to read the exact words written by the addresser and maintains the ability to respond. In contrast, there exists a real risk of harm to Defendants and other inmates without the enhanced mail monitoring procedures, as the introduction of synthetic narcotics, contraband, or fraudulent information concealed within the original correspondence into the institution by inmates with a documented history of engaging in such behavior could result in internal security and safety threats to other inmates and staff. Finally, as to serving the public interests, the Court finds that the enhanced mail monitoring procedures serve the public interests by ensuring the safety of inmates while preserving their First Amendment rights. Accordingly, Plaintiff's motion for a preliminary injunction (Doc. No. 2), will be denied.

### B. Motion for Reconsideration

Plaintiff Railey has filed a motion for reconsideration of this Court's July 24, 2018 Screening Memorandum and Order. (Doc. No. 68.) In reviewing the motion and its accompanying brief (Doc. Nos. 68 and 69), the Court construes these documents to advance the following two arguments: (1) Plaintiff Railey did not intend to suggest that he wished to represent all Plaintiffs, but rather, was

requesting the appointment of counsel to represent all Plaintiffs in a class action; and (2) while Plaintiffs appear to acknowledge that they do not have a constitutionally protected right to a grievance procedure, Plaintiffs maintain that they intended to set forth a First Amendment retaliation claim against Defendants for their interference with grievance filings and obtaining copies of legal materials. (Doc. Nos. 68 and 69.)

A motion for reconsideration is a device of limited utility. Its purpose is to correct manifest errors of law or fact or to present newly discovered evidence. Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). Accordingly, a party seeking reconsideration must demonstrate at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court entered judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).

A motion for reconsideration is appropriate in instances where the court has "patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." Rohrbach v. AT&T Nassau Metals Corp., 902 F. Supp. 523, 527 (M.D. Pa. 1995), vacated in part on other grounds on reconsideration, 915 F.

Supp. 712 (M.D. Pa. 1996) (quoting Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983)). It may not be used as a means to reargue unsuccessful theories, or argue new facts or issues that were not presented to the court in the context of the matter previously decided. Drysdale v. Woerth, 153 F. Supp.2d 678, 682 (E.D. Pa. 2001). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." Continental Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995).

Regarding Plaintiffs' first argument, in its Screening Memorandum and Order, the Court construed Plaintiff's "motion for consideration to proceed as a 'class action' under Rule 23" as Plaintiffs requesting that Railey act as "agent/representative" to pursue claims on behalf of the other within-named Plaintiffs. (Doc. Nos. 3, 38 ) Railey claims that the motion was intended to seek the appointment of counsel to represent all Plaintiffs. (Doc. Nos. 68, 69.) To the extent Plaintiffs request the appointment of counsel, although prisoners have no constitutional or statutory right to the appointment of counsel in civil cases, district courts have broad discretionary power to appoint counsel for indigent civil litigants under 28 U.S.C. § 1915(e)(1). Montgomery v. Pinchak, 294 F.3d 492, 498 (3d Cir. 2002).

In Tabron v. Grace, the Third Circuit developed a non-exhaustive list of factors to aid district courts in determining whether to appoint counsel for such litigants. Tabron v. Grace, 6 F.3d 147, 155-57 (3d Cir. 1993). Such factors include the plaintiff's ability to present his case, the complexity of the legal and discovery issues in the case, the amount of factual investigation that will be required, the necessity of expert witnesses, and whether "witness credibility is a key issue." Id. Additionally, "[a]s a threshold matter, a district court must assess whether the claimant's case has some arguable merit in fact and law." Montgomery, 294 F.3d at 498-99 (citing Tabron, 6 F.3d at 155). Finally, "[t]he plaintiff's ability to present a case is '[p]erhaps the most significant' consideration and depends on factors such as 'the plaintiff's education, literacy, prior work experience, and prior litigation experience . . . along with a plaintiff's ability to understand English . . . [and] the restraints placed upon a prisoner plaintiff by confinement.'" Nunuez v. Wetz, Civ. No. 14-cv-0727, 2017 WL 4698092, at *1 (M.D. Pa. Oct. 19, 2017) (citing Montgomery, 294 F.3d at 501).

The Tabron factors do not warrant appointing counsel at this time. Plaintiffs have the apparent ability to read, write and understand English, as well as the ability to litigate this action pro se, as they have thus far managed to file a complaint, motions to proceed in forma pauperis, a motion for a temporary restraining order and preliminary injunction along with a brief in support,

13

numerous declarations, a motion for reconsideration, a motion to file an amended complaint and motion to sever. Moreover, the legal issues in this case are not complex and this Court's duty to construe pro se pleadings liberally, Riley v. Jeffes, 77 F.2d 143, 147-48 (3d Cir. 1985), coupled with Plaintiffs' apparent ability to litigate this action, militate against the appointment of counsel at this time. Accordingly, the Court declines to appoint counsel for Plaintiffs, however, in the event that future proceedings demonstrate the need for counsel, the matter may be reconsidered by the Court sua sponte or upon a motion properly filed by Plaintiffs.

Plaintiffs' second argument is that they intended to allege a First Amendment retaliation claim against Defendants for their interference with grievance filings. (Doc. Nos. 68 and 69.) The Court addressed this argument in its Screening Memorandum and Order, stating that inmates do not have a constitutionally protected right to a grievance procedure. (Doc. No. 38 at 10.) However, Plaintiffs appear to argue that they have set forth a retaliation claim because of the "retaliatory manner used to deny [Plaintiffs] the voice of [filing] grievance[s]." (Doc. No. 69 at 4.)

While the Court addressed this claim in the context of a First Amendment access-to-the-courts claim, Plaintiffs fair no better on a retaliation claim under the First Amendment. To prevail on a claim of retaliation, a prisoner-plaintiff must first establish that he was engaged in constitutionally protected conduct. See

Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). While the filing of an inmate grievance constitutes a constitutionally protected activity, there are no allegations in the complaint that any Plaintiff was retaliated for filing a grievance. Rather, it appears that Plaintiffs insist that the mere request for a grievance form, and its denial, gives rise to a constitutional concern amounting to retaliation. This conduct, however, simply does not involve the exercise of a constitutional right. See Hunter v. Bledso, No. 1:cv-10-0927, 2010 WL 3154963, at *4 (M.D. Pa. Aug. 9, 2010) ("The difficulty here for [p]laintiff is that he only threated to file a grievance; he did not actually file one. Since [p]laintiff's conduct did not actually involve the exercise of a constitutional right, he fails to satisfy the first element of a retaliation claim.") (collecting cases); Wicker v. Shannon, No. 3:09-cv-1629, 2010 WL 3812351, at *6 (M.D. Pa. Sept. 21, 2010 ("[Plaintiff] cannot establish a retaliation claim against [defendant] based merely on his request for a grievance form.") (citing Hunter v. Bledsoe, No. 1:cv-10-0927, 2010 WL 3154963, at *4 n.8 (M.D. Pa. Aug. 9, 2010)).[4] Plaintiffs have failed to allege that any of them engagement in a

---

[4] Moreover, recent case law from the Supreme Court and Third Circuit has provided that a First Amendment retaliation claim may not apply to a Bivens claim against a federal official. See Vanderklok v. United States, 868 F.3d 189, 199 (3d Cir. 2017); Watlington on behalf of FCI Schuylkill African Am. Inmates v. Reigel, 723 F. App'x 137, 140 n.3 (3d Cir. Jan. 22, 2018); Ziglar v. Abbasi, — U.S. —, 137 S.Ct. 1843, 1854, 198 L.Ed.2d 290 (2017).

constitutionally protected activity. Therefore, Plaintiffs' motion for reconsideration will be denied.

### C. Motion to Sever

Plaintiff Railey's final motion before the Court is a motion to sever Plaintiff Wilson from this action. (Doc. No. 81.) Railey alleges that the Plaintiffs in this matter lack the ability to communicate with one another which has attributed to the various random and extraneous filings and added to the state of confusion. (Doc. No. 81.) Railey claims that he has communicated with the other Plaintiffs and that all but Plaintiff Wilson wish to adopt the motions Railey has been filing. (Id. at 2.) Railey requests that the Court sever Wilson from the action, as Wilson wishes to act separately from all other Plaintiffs. (Id.)

Federal Rule of Civil Procedure 20(a)(1) provides in relevant part that persons may be joined in one action as plaintiffs if:

> (A) they assert any right to relief jointly, severally, or in the alternative with respect to, or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1). Courts have broad discretion in applying Rule 20 to reduce inconvenience, delay, and added expense to the parties and to the court, and to promote judicial economy. 7 Charles Alan Wright et al., Federal Practice and

Procedure § 1653 at 410-12 (3d ed. 2001). Federal Rule of Civil Procedure 21 provides that upon motion or on its own, the court may at any time, on just terms, sever any claim against a party. It has been recognized that when a complaint "collects a series of distinct claims, involving diverse parties, and disparate acts which are alleged to have occurred at different times" the "joinder of such claims in a single lawsuit is inappropriate" under Rule 20. Hull v. Unknown and Known Members of U.S. Government, No. 1:12-cv-203; 2012 WL 5508494, at *8 (M.D. Pa. Oct. 3, 2012).

While it appears that Plaintiffs allege that they have experienced interference with their mail, not all Plaintiffs have been subject to the same type of mail restrictions, suffered the same type of injuries, or share the same allegations against the particular Defendants. It is also noted that Plaintiffs are having difficulty filing joint pleadings and communicating with one another, and as such, severance of their claims will not have any negative impact on the pursuit of their individual claims. In addition, severance will protect and promote the orderly and fair disposition of Plaintiffs' claims.

Accordingly, the Court will grant the motion to sever (Doc. No. 81), as follows. The claims of Plaintiff Nathan A. Railey will proceed under this matter, No. 18-cv-716. The Clerk of Court will be directed to open the claims of Plaintiffs Camden Barlow, Christopher Alvarez, Terrell Wilson, Doreteo Garcia, and Juan C.

Valles in new, individual actions. The filing date of Barlow, Alvarez, Wilson, Garcia, and Valles' claims will be preserved. The complaint (Doc. No. 1), standing practice Order (Doc. No. 8), respective prisoner authorization forms and administrative orders (Doc. Nos. 10, 20, 22, 34, 37, 43-45, 47, 48), this Court's July 24, 2018 Memorandum and Order (Doc. Nos. 38, 39), waiver of service forms (Doc. Nos. 40, 55), and this Memorandum and its accompanying Order will also be docketed by the Clerk of Court in Barlow, Alvarez, Wilson, Garcia, and Valles' actions.

Furthermore, within thirty (30) days from the date of this Memorandum's accompanying Order, Plaintiffs shall file an amended complaint. The amended complaint must be a new pleading that stands by itself without reference to the original complaint, exhibits, or any other documents already filed. The amended complaint should set forth claims in short, concise and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure. Each paragraph should be numbered. It should specify which actions are alleged as to which defendants and sufficiently allege personal involvement of the defendant in the acts which are claimed to have violated plaintiff's rights. Mere conclusory allegations will not set forth a cognizable claim. If amended complaints are not filed within the time prescribed above, the Court will direct Defendants to respond to the remaining

First Amendment mail interference/enhancement claim as set forth in the original complaint (Doc. No. 1).

Consequently, because the Court is severing this action and directing each Plaintiff to file an amended complaint in their own action, the Court will deny without prejudice, Plaintiff Railey's motion for leave to file an amended complaint (Doc. No. 65), which pertains to all Plaintiffs, and deny as moot Defendants' motion to stay the proceedings (Doc. No. 83). The Court will also deny Plaintiff Wilson's motion pursuant to Federal Rule of Evidence 201 (Doc. No. 63), as moot.[5]

## IV. CONCLUSION

In accordance with the foregoing, Plaintiffs' motion for a temporary restraining order and preliminary injunction (Doc. No. 2), will be denied; Plaintiff Wilson's motion pursuant to Federal Rule of Evidence 201 (Doc. No. 63), will be denied as moot; Plaintiff Railey's motion for leave to file an amended complaint (Doc. No. 65), will be denied without prejudice; Plaintiff Railey's motion for reconsideration (Doc. No. 68), will be denied; Plaintiff Railey's motion to sever party from action (Doc. No. 81), will be granted as follows: The claims of Plaintiff Nathan A. Railey will proceed under this matter, No. 18-cv-716. The Clerk of

---

[5] Wilson requests that he receive updates on the status of this case because the Court denied the motion to proceed as a class action. As a named Plaintiff to this action, Wilson should already be receiving all dockets filed in this matter.

Court will be directed to open the claims of Plaintiffs Camden Barlow, Christopher Alvarez, Terrell Wilson, Doreteo Garcia, and Juan C. Valles in new, individual actions, and the filing date of Barlow, Alvarez, Wilson, Garcia, and Valles' claims will be preserved. All Plaintiffs will be directed to file an amended complaint within thirty (30) days. Defendants' motion to stay the proceedings (Doc. No. 83), will be denied as moot. An appropriate order follows.

    s/Sylvia H. Rambo
    SYLVIA H. RAMBO
    United States District Judge

Dated: October 10, 2018