**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

NATHAN A. RAILEY,        :
    Plaintiff              :
                         :       **No. 1:18-cv-716**
      v.                  :
                         :       **(Judge Rambo)**
**WARDEN DAVID J.**      :
**EBBERT,** *et al.*,        :
    Defendants         :

**MEMORANDUM**

## I.  BACKGROUND

This case was initiated by the filing of a complaint pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), in Civil Action No. 18-716 by *pro se* Plaintiffs Camden Barlow, Christopher Alvarez, Justin Haynes, Darryl Taylor, Tabarus Holland, Terrell Wilson, Tony C. Knott, Agustin Argueta, Douglas Piggee, and Nathan A. Railey ("Railey"), all of whom were incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania ("USP Lewisburg") at that time.  (Doc. No. 1.)  In that complaint, Plaintiffs alleged that Defendants had violated their rights under the Equal Protection Clause of the Fourteenth Amendment, their First Amendment rights to access the courts, and their First Amendment rights regarding mail.  Subsequently, Doreteo Garcia, Juan Carlos Valles, and David Jackson were added as Plaintiffs.  (Doc. No. 28).  On July 24, 2018, the Court dismissed Plaintiffs' Equal Protection claim and their access to the

courts claim and directed service of their First Amendment enhanced mail restriction claim. (Doc. Nos. 38, 39). On October 10, 2018, the Court granted Railey's motion to sever and directed that each individual Plaintiff file an amended complaint under a separate civil action number by November 9, 2018. (Doc. Nos. 89, 90).

Railey filed an amended complaint on December 12, 2018 (Doc. No. 106), which the Court dismissed for failure to comply with the Federal Rules of Civil Procedure on January 3, 2019 (Doc. No. 110). The Court granted Railey leave to file a second amended complaint within twenty (20) days. (*Id.*) After receiving extension of time (Doc. Nos. 117-120), Railey filed his second amended complaint and memorandum in support thereof (Doc. Nos. 121-22) on April 18, 2019. In his second amended complaint, Railey names as Defendants Warden David J. Ebbert ("Ebbert"), SIS Officer Buebendorf ("Buebendorf"), Officer Gass ("Gass"), Counselor Tharp ("Tharp"), and an Unnamed Mailroom Officer. He alleges that Defendants violated his First Amendment rights by interfering with and destroying his mail and by retaliating against him by seizing his legal property, refusing to provide legal copies, and interfering with the administrative remedy process. (Doc. No. 121.) He also contends that Defendants violated his Fifth Amendment due process rights by failing to properly implement and apply the enhanced mail

monitoring procedures and his equal protection rights[1] by discriminating against him on the basis of his classification as a sovereign citizen. (*Id.*) As relief, Railey seeks compensatory and punitive damages, as well as declaratory and injunctive relief.[2] (*Id.*)

By Order entered on April 22, 2019, the Court directed Railey to provide a name and address for Defendant Unnamed Mailroom Officer within thirty (30) days and directed service of the second amended complaint upon Defendant Gass. (Doc. No. 123.) Railey subsequently filed a motion for a thirty (30)-day extension to provide identifying information for Defendant Unnamed Mailroom Officer (Doc. No. 128), which the Court granted in an Order entered on May 2, 2019 (Doc. No. 129). Despite the extension of time, Railey has not provided identifying information for this Defendant.

Defendants Ebbert, Buebendorf, Tharp, and Gass filed a motion to dismiss and/or motion for summary judgment on July 1, 2019 (Doc. No. 132) and filed their supporting materials on July 15, 2019 (Doc. Nos. 135-36). After receiving an

---

[1] "The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws." *United States v. Windsor*, 570 U.S. 744, 774 (2013).

[2] Railey is now incarcerated at the United States Penitentiary in Coleman, Florida ("USP Coleman"). His transfer to that facility, therefore, moots his claims for declaratory and injunctive relief. *See Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) (noting that "[a]n inmate's transfer from the facility complained of generally moots the equitable and declaratory claims").

extension of time (Doc. Nos. 137-38), Railey filed his response to Defendants'
statement of material facts and oppositional brief (Doc. Nos. 143-44) on September
4, 2019. In an Order dated September 17, 2019, the Court noted that Defendants'
motion to dismiss and/or motion for summary judgment asserts, *inter alia*, that
Railey failed to properly exhaust his administrative remedies before filing this
action. Pursuant to *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018), the Court
informed the parties that it would consider the exhaustion issue in the context of
summary judgment, and by doing so, would consider matters outside the pleadings
in its role as factfinder. (*Id.*) Accordingly, the Court directed Defendants to, within
fourteen (14) days, file an amended or supplemental brief and statement of material
facts "to further address the issue of whether Plaintiff has exhausted his
administrative remedies and present any additional materials pertinent to the issue
to the extent they have not already done so." (*Id.*) The Court directed Railey to file
a brief in opposition within twenty-one (21) days from the date that Defendants filed
their amended or supplemental materials. (*Id.*) The Court directed Railey to
"specifically address the issue of administrative exhaustion and submit materials and
documents pertinent to the issue." (*Id.*) The Court also directed him to "file a
statement of material facts specifically responding to the numbered paragraphs in
Defendants' statements." (*Id.*)

Defendants filed their reply brief on September 18, 2019 (Doc. No. 146), as well as a letter noting that they "will not avail themselves of the opportunity to file a supplemental memorandum and statement of material facts but will instead rely on the papers previously filed" (Doc. No. 147 at 2). Given Defendants' letter, there will be no supplemental materials to which Railey can respond. Accordingly, the motion to dismiss and/or motion for summary judgment is ripe for resolution.

## II.    STANDARD OF REVIEW

### A.    Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under *Twombly* and *Iqbal*, pleading requirements have shifted to a "more heightened form of pleading." *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. *Id.* The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court

instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters

incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)).

In the context of *pro se* prisoner litigation specifically, the court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

**B.      Motion for Summary Judgment**

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material

fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The Third Circuit has held that filing a motion to dismiss, or in the alternative, a motion for summary judgment is sufficient "to place the parties on notice that summary judgment might be entered." *Hilfirty v. Shipman*, 91 F.3d 573, 578-79 (3d Cir. 1996).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence with which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing *Anderson*, 477 U.S. at 248). A factual dispute is "material" if it might affect the outcome of the case. *Anderson*, 477 U.S. at 248. In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the non-moving party. *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 278 (3d Cir. 2001); *White v. Westinghouse Elec, Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

A party seeking summary judgment always bears the initial burden of informing the court of the basis of its motion and identifying those portions of the

record that it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-moving party then has the burden to "come forth with 'affirmative evidence, beyond the allegations of the pleadings,' in support of its right to relief." *U.S. Bank, Nat'l Ass'n v. Greenfield*, No. 1:12-cv-2125, 2014 WL 3908127, *2 (M.D. Pa. Aug. 11, 2014) (quoting *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004)). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," a court may grant summary judgment or consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2-3).

## III.    UNDISPUTED FACTS[3]

---

[3] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. *Id.* Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. *See id.* Here, Railey filed a response to Defendants' statement of material facts in compliance with M.D. Pa. L.R. 56.1. (Doc. No. 143.) His second amended complaint is also verified and may be treated as an affidavit in opposition to summary judgment. *See Ziegler v. Eby*, 77 F. App'x 117, 120 (3d Cir. 2003) (noting that "the complaint was not verified, thereby precluding the District Court from treating it as the equivalent of an affidavit for purposes of Federal Rule of Civil Procedure 56(e)"); *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985) (treating verified complaint as an affidavit on summary judgment motion); *see also Boomer v. Lewis*, No. 06-850, 2009 WL 2900778, at *2 n.4 (M.D. Pa. Sept. 9, 2009) ("A verified complaint may be treated as an affidavit in support of or in opposition to a motion for summary judgment if the allegations are specific and based on personal knowledge."). However, this Court is not "required

Railey was previously confined in the Special Management Unit ("SMU") at USP Lewisburg from December 26, 2017 through May 6, 2019. (Doc. No. 135 ¶ 7.)

The BOP "has established a multi-tier system whereby a federal prisoner may seek formal review of any aspect of his imprisonment." (*Id.* ¶ 9.) First, an inmate must present his complaint to staff "on an Informal Resolution Attempt form commonly referred to as a BP-8." (*Id.* ¶ 10.) If informal resolution is not successful, the inmate may then submit a Request for Administrative Remedy (BP-9) to the Warden. (*Id.* ¶ 11.) "The deadline for completion of the BP-8 and submission of the BP-9 is twenty days from the date of the event which is the subject of the remedy." (*Id.* ¶ 12.) The Warden has twenty (20) days to respond to the BP-9. (*Id.* ¶ 13.) If an inmate is unsatisfied with the Warden's response, he may file a Regional Administrative Remedy Appeal (BP-10) with the Regional Director within twenty (20) days from the date of the Warden's response. (*Id.* ¶ 14.) The Regional Director has thirty (30) days to respond. (*Id.* ¶ 15.) Finally, an inmate may appeal the Regional Director's response by filing a Central Office Administrative Remedy Appeal (BP-11) with the Central Office within thirty (30) days of the Regional Director's response. (*Id.* ¶ 16.) The Central Office has forty (40) days to respond.

to accept unsupported, self-serving testimony as evidence sufficient to create a jury question." *Hammonds v. Collins*, Civ. No. 12-236, 2016 WL 1621986, at *3 (M.D. Pa. Apr. 20, 2016) (citing *Brooks v. Am. Broad. Co.*, 999 F.2d 167, 172 (6th Cir. 1993)). Accordingly, the Court sets forth the undisputed facts above with footnotes setting forth the parties' relevant factual disputes.

(*Id.* ¶ 17.)  The Central Office appeal is the final appeal, and no appeal is fully exhausted "until it is decided on its merits by the BOP's Central Office."  (*Id.* ¶¶ 18-19.)  An administrative remedy may be rejected at any level if it was not properly or timely submitted.  (*Id.* ¶ 20.)  If rejected, the remedy is "returned to the inmate and the inmate is provided with a written notice explaining the reason for rejection." (*Id.*)  Usually, the BOP does not "maintain a copy of an administrative remedy that has been rejected."  (*Id.* ¶ 21.)  A rejection of a remedy is not a decision on the merits.  (*Id.* ¶ 22.)

Each administrative remedy is given an identification number upon submission.  (*Id.* ¶ 23.)  The number is then followed by a letter to indicate "the level at which that particular remedy was filed."  (*Id.* ¶ 24.)  "F" refers to the institution level; "R" refers to the Regional Director; and "A" refers to the Central Office.  (*Id.* ¶¶ 25-27.)

The BOP maintains a computerized index of all remedies and appeals filed by all inmates.  (*Id.* ¶ 29.)  An "Administrative Remedy Generalized Retrieval provide[s] details concerning each remedy filed by the inmates including the administrative remedy ID number, the date the remedy was received, an abstract (description) of the issue(s) raised, the three-letter code of the facility where the event occurred, the date the remedy was responded to, the status code, and the status

reason." (*Id.* ¶ 30.)  Railey has filed several administrative remedies during his incarceration at USP Lewisburg.[4]  (*Id.* ¶ 32.)

Railey was assigned to Counselor Reese's caseload from December 26, 2017 until March 2, 2018.  (*Id.* ¶¶ 56-58.)  Reese's logbook indicates that there "is no record of Railey returning a completed BP-8 form during that time."  (*Id.* ¶ 59.)  Reese never refused to provide Railey with administrative remedy forms and never interfered in any way with his filing of administrative remedies.  (*Id.* ¶¶ 60-61.)

Defendant Tharp is employed as a correctional counselor at USP Lewisburg.  (*Id.* ¶ 36.)  Railey was assigned to Defendant Tharp's caseload from March 2, 2018 through May 6, 2019.  (*Id.* ¶ 38.)  Administrative remedy forms "are primarily distributed by Correctional Counselors who make routine rounds several times a week."[5]  (*Id.* ¶ 39.)  When an inmate makes a request for a BP-8, the informal resolution form, the assigned counselor "gives the inmate the form with the date on which it was provided and the inmate's name noted on it."  (*Id.* ¶ 41.)  When an inmate returned a completed BP-8, a number is assigned and it is "entered in a

---

[4] Defendants maintain that Railey has filed twenty-two (22) administrative remedies while at USL Lewisburg and that none of them "pertain[] to the subject matter of the Complaint."  (Doc. No. 135 ¶¶ 32-33.)  Railey, however, asserts that he has filed nineteen (19) administrative remedies concerning nineteen (19) individual issues and that he did file an administrative grievance concerning the mail policies.  (Doc. No. 143 ¶¶ 32-33.)

[5] Railey maintains that he and other inmates would "be lucky to see Counselor Tharp walk the unit once a week."  (*Id.* ¶ 39.)

logbook with the date on which it was returned." (*Id.* ¶ 42.) The counselor then forwards the request to the proper department for response. (*Id.* ¶ 43.) Once the department responds, the response "is provided to the inmate and the date is noted in the logbook." (*Id.* ¶ 44.)

Defendant Tharp's logbook shows that Railey returned two completed BP-8 forms during the time period from March 2, 2018 through April 3, 2019. (*Id.* ¶ 45.) On March 29, 2018, Railey returned a completed BP-8 concerning his mail and a BP-8 concerning a medical issue. (*Id.* ¶¶ 46, 48.) Defendant Tharp gave Railey BP-9 forms on April 3, 2018, when he also provided Railey with the responses to his BP-8s. (*Id.* ¶¶ 47, 49.) Defendant Tharp continued to provide Railey "with BP-8s, responses to BP-8s, along with BP-9s, 10s, and 11s."[6] (*Id.* ¶ 50.) Between April 3, 2018 and May 6, 2019, Railey submitted four (4) additional BP-8s, for which he was provided a response and a BP-9 form for each. (*Id.* ¶ 51.)

---

[6] Defendants further assert that Defendant Tharp never "refused to provide Railey with administrative remedy forms upon his request" and never "interfere[d] in any manner with Railey's filing of administrative remedies." (Doc. No. 135 ¶¶ 54-55.) Railey, however, maintains that when he "first arrived at B-Block on Mar[ch] 1, 2018, Tharp did nothing but refuse [him], and everyone, forms." (Doc. No. 143 ¶ 54.) He asserts that "when the lawsuit was filed, he began to halfway do his job, then towards the end, [Railey] was thanking him for doing his job well." (*Id.*)

## IV.  DISCUSSION

In their motion to dismiss and/or motion for summary judgment, Defendants Ebbert, Buebendorf, Tharp, and Gass argue that: (1) the Court should decline to imply a *Bivens* remedy for Railey's claims; (2) Railey failed to exhaust his administrative remedies; and (3) sovereign immunity bars Railey's claims against them in their official capacities.  (Doc. No. 136.)  The Court will therefore first consider whether a *Bivens* remedy is even available to Railey.

In 1971, the Supreme Court concluded that, even absent statutory authorization, it would enforce a damages remedy allowing individuals to be compensated after experiencing violations of the prohibition against unreasonable searches and seizures contained in the Fourth Amendment.  *Bivens*, 403 U.S. at 397. Subsequently, the Court extended the *Bivens* cause of action in two cases involving constitutional violations.  First, in *Davis v. Passman*, 442 U.S. 228, 249-49 (1979), the Court concluded that the Fifth Amendment's Due Process Clause provided a damages remedy to an administrative assistant claiming that a Congressman had discriminated against her on the basis of gender.  Next, the Court concluded that the Eighth Amendment's prohibition on cruel and unusual punishment provided a prisoner a cause of action for damages against prison officials who failed to treat his asthma.  *Carlson v. Green*, 446 U.S. 14, 19 (1980).  "These three cases—*Bivens*,

14

*Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017).

As noted above, Railey's second amended complaint raises the following claims: (1) Defendants Ebbert and Buebendorf violated his First Amendment rights by interfering with and destroying his mail; (2) Defendants Buebendorf, Tharp, and Gass violated his First Amendment rights by retaliating against him by seizing his legal property, interfering with the administrative remedy process, and refusing to provide legal copies; (3) Defendants Ebbert and Buebendorf violated his Fifth Amendment due process rights by failing to properly implement and apply the enhanced mail monitoring procedures; and (4) Defendants Ebbert and Buebendorf violated his Fifth Amendment rights by discriminating again him on the basis of his classification as a sovereign citizen. (Doc. No. 121 ¶¶ 33-83.) The Court considers below whether *Bivens* extends to each of these claims.

### A.    First Amendment Claims

The Supreme Court has "never [explicitly] held that *Bivens* extends to First Amendment claims." *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012). For many years, courts, including the Supreme Court, assumed that *Bivens* extended to First Amendment claims. *See Wood v. Moss*, 572 U.S. 744, 757 (2014) ("[W]e have

several times assumed without deciding that *Bivens* extends to First Amendment claims."). Moreover, the Third Circuit has, on many occasions, held that plaintiffs could see redress for First Amendment violations by bringing a *Bivens* suit. *See, e.g.*, *Milhouse v. Carlson*, 652 F.2d 371, 374 (3d Cir. 1981) (concluding that *Bivens* would allow a cause of action alleging denial of a prisoner's right to access the courts); *Paton v. La Prade*, 524 F.2d 862, 870 (3d Cir. 1975) (concluding that a high school student who mailed an envelope to the Socialist Workers Party and had her name and address recorded by the FBI could bring suit under *Bivens* for free speech violations); *cf. George v. Rehiel*, 738 F.3d 562, 585 n.24 (3d Cir. 2013) (assuming without deciding that a *Bivens* action could be brought alleging a First Amendment right to be free from government retaliation for speech).

However, recently, in *Ziglar*, the Supreme Court noted that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar*, 137 S. Ct. at 1857. As the Court stated in *Ziglar*:

> If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new. Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the

Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1859-60. If the case presents a new context, a court must then consider whether any alternative remedies exist. *Id.* Even absent alternative remedies, a court must also consider whether special factors counsel against extending the *Bivens* remedy. *Id.*

### 1. Retaliation Claims

The undersigned recently determined that federal inmates are not entitled to a *Bivens* remedy for claims of retaliation brought under the First Amendment. *See Rinaldi v. United States*, No. 1:13-cv-450, 2019 WL 1620340, at *8-9 (M.D. Pa. Apr. 16, 2019). Specifically, this Court stated:

> As Magistrate Judge Carlson recently noted, the Third Circuit has extended *Ziglar*'s "analysis to First Amendment retaliation claims arising in an institutional security and safety context, and has held that after *Ziglar* courts should not imply the existence of such claims under *Bivens*." *Randolph v. FCI Allenwood*, No. 1:17-CV-786, 2018 WL 2276246, at *10 (M.D. Pa. Apr. 24, 2018), *Report and Recommendation adopted by* 2018 WL 2263733 (M.D. Pa. May 17, 2018). Thus, the Third Circuit recently refused to extend *Bivens* to a First Amendment retaliation claim brought against an agent of the Transportation Safety Administration. *Vanderklok v. United States*, 868 F.3d 189, 199 (3d Cir. 2017). The Third Circuit stated that "the existence of a *Bivens* action for First Amendment retaliation is no longer something that we should assume without deciding." *Id.*
>
> Subsequently, the United States District Court for the District of New Jersey applied *Vanderklok* to a First Amendment retaliation claim brought against a federal prison workplace supervisor. *See Alexander v. Ortiz*, No. 15-6981 (JBS-AMD), 2018 WL 1399302 (D.N.J. Mar. 20,

2018). The plaintiff, a former federal prisoner, filed suit against his supervisor for racial discrimination and retaliation. *Id.* at *1. The court concluded that the case presented a new *Bivens* context and that there were no alternative remedies available. *Id.* at *5-6. However, the court concluded that special factors counseled against extending *Bivens*, noting that "the prison workplace context is a special factor precluding extending the *Bivens* remedy." *Id.* at *7. Likewise, other courts have refused to extend *Bivens* to First Amendment retaliation claims in the prison context after *Vanderklok*. *See, e.g.*, *Keller v. Walton*, No. 3:16-cv-00565-JPG-GCS, 2019 WL 1513498, at *1-3 (S.D. Ill. Apr. 8, 2019) (denying prisoner plaintiff's motion for reconsideration on the basis that *Bivens* does not extend to First Amendment retaliation claims); *Pinkney v. Lockett*, No. 5:16-cv-00103-Oc-02PRL, 2019 WL 1254851, at *5-7 (M.D. Fla. Mar. 19, 2019) (declining to extend *Bivens* to a First Amendment retaliation claim brought by a federal inmate against various prison officials); *Gonzalez v. Bendt*, No. 4:16-CV-04038-KES, 2018 WL 1524752, at *4 (D.S.D. Mar. 28, 2018) (declining to extend *Bivens* to a First Amendment retaliation claim brought by an inmate against a federal employee); *Randolph*, 2018 WL 2276246, at *11 (declining to extend *Bivens* to a First Amendment retaliation claim brought by a plaintiff, who had attempted to visit her fiancé in federal prison, against a federal employee).

Furthermore, after *Vanderklok*, the Third Circuit affirmed the dismissal of a First Amendment retaliation claim brought by a federal prisoner against correctional staff. *See Watlington on behalf of FCI Schuylkill African Am. Inmates v. Reigel*, 723 F. App'x 137, 139-40 (3d Cir. 2018) (per curiam). Specifically, the Third Circuit observed, in part, that "a First Amendment retaliation claim . . . may not apply to a *Bivens* claim against a federal official." *Id.* at 140 n.3 (citing *Vanderklok*, 868 F.3d at 199; *Reichle*, 566 U.S. at 663 n.4).

Guided by the cases noted above, the Court concludes that extending *Bivens* to Rinaldi's First Amendment retaliation claim would be contrary to law. As Magistrate Judge Carlson noted in *Randolph*, "[e]ven if there was no alternative remedy available to [Rinaldi], taken together [the Court finds] the reasoning in *Ziglar*, *Vanderklok*, *Watlington* and *Alexander* calls for the application of *Vanderklok* to the special factors that should be considered in the prison context and

cautions against extending *Bivens* here." *Randolph*, 2018 WL 2276246, at *11.

In light of the Court's previous conclusion in *Rinaldi*, the Court concludes here that extending *Bivens* to Railey's First Amendment retaliation claims would be contrary to law. Accordingly, Railey's First Amendment retaliation claims are subject to dismissal.

### 2. Interference With and Destruction of Mail

Railey also maintains that Defendants Ebbert and Buebendorf violated his First Amendment rights by interfering with and destroying his mail. (Doc. No. 121 ¶¶ 33-45.) Specifically, Railey alleges that he has not received mail, that his mail has been delayed, and that the original letters and other correspondence are destroyed after being copied so that the copies can be provided to the recipients. (*Id.*)

The Court agrees with the several other federal courts that have concluded that Railey's claim for interference with and destruction of his mail presents a new context for purposes of *Bivens*. *See, e.g.*, *Zavala v. Rios*, 721 F. App'x 720, 721 (9th Cir. 2018); *White v. True*, No. 19-CV-418-JPG, 2019 WL 3074528, at *2 (S.D. Ill. July 15, 2019); *White v. Inch*, No. 3:17-cv-1059-JPG-DGW, 2018 WL 6584899, at *1 (S.D. Ill. Dec. 14, 2018); *Cox v. True*, No. 3:17-cv-338-JPG-DGW, 2018 WL 6928796, at *3 (S.D. Ill. Sept. 20, 2018), *Report and Recommendation adopted*,

2019 WL 95478 (S.D. Ill. Jan. 3, 2019); *White v. Sloop*, No. 3:17-cv-1059-JPG-DGW, 2018 WL 6977336, at *2-3 (S.D. Ill. Aug. 31, 2018), *Report and Recommendation adopted*, 2018 WL 6584899 (S.D. Ill. Dec. 14, 2018); *Stratmon v. Morris*, No. 1:12-cv-1837-DAD-SAB (PC), 2018 WL 3388406, at *3 (E.D. Cal. July 10, 2018); *Howard v. Lackey*, No. 7:16-129-KKC, 2018 WL 1157547, at *3 (E.D. Ky. Mar. 5, 2018). Thus, the Court must next consider, under *Ziglar*, whether any alternative remedies exist and whether special factors counsel against extending the *Bivens* remedy. *Ziglar*, 137 S. Ct. at 1859-60.

Defendants Ebbert, Buebendorf, Tharp, and Gass assert that Railey has alternative remedies in the form of the BOP's administrative remedy process as well as under state tort law. (Doc. No. 136 at 18-21.) They also argue that four (4) special factors are present:

> (1) separation-of-powers concerns raised by Congress' repeated legislative action on safeguarding the rights of federal prisoners without ever providing a damages remedy in the federal arena; (2) system-wide costs and the burden on government imposed by the creation of a remedy; (3) the difficulty in creating workable causes of action; and (4) the harmful effect the creation of a remedy would have on the discharge of prison officials' duties.

(*Id.* at 21.)

The Court agrees with Defendants, as well as the other courts to have considered the issue, that alternative remedies are available for Railey to challenge

the alleged interference with and destruction of his mail. Railey could seek relief

through the BOP's administrative remedy process, as he attempted to do. *See Cox*,

2018 WL 6928796, at *4; *Stratmon*, 2018 WL 3388406, at *4; *Howard*, 2018 WL

1157547, at *3. The fact that Railey's administrative remedies were not successful

does not mean that such a process does not exist as an alternative remedy. *See Corr.*

*Servs. Corp. v. Malesko*, 534 U.S. 61, 69 (2001) (noting that "[s]o long as the

plaintiff had an avenue for some redress, bedrock principles of separation of powers

foreclosed judicial imposition of a new substantive liability"); *Gonzalez v. Hasty*,

269 F. Supp. 3d 45, 60 (E.D.N.Y. 2017). Furthermore, while Railey could not bring

suit under the Federal Tort Claims Act ("FTCA") for prison officials' deprivation of

his personal property, *see Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 215 (2008),

he could seek to pursue a claim under 31 U.S.C. § 3723, which allows for small

claims of up to $1,000.00 to be presented to the respective agency to redress damages

caused by the negligent acts of a federal officer, or a claim under 31 U.S.C. § 3724,

which allows the Attorney General to settle claims for losses of private property,

among other things, caused by Department of Justice employees. *See Cox*, 2018 WL

6928796, at *4. Moreover, as other courts have recognized, special factors exist

counseling against the expansion of *Bivens* to First Amendment claims regarding

interference with mail, such as Congress' decision to not provide a damages remedy

for certain violations and the financial burden on federal agencies resulting from litigation.  *See, e.g.*, *White*, 2018 WL 6977336, at *4.; *Cox*, 2018 WL 6928796, at *5; *Stratman*, 2018 WL 3388406, at *4; *Howard*, 2018 WL 1157547, at *3.  As one court has noted, "[c]ourts owe substantial deference to the professional judgment of prison administrators, and absent concerns that prison inmates will be otherwise unable to redress their claims, courts should hesitate to create a new cause of action that may be brought against prison officials for monetary damages."  *Richardson v. United States*, No. CIV-18-763-D, 2019 WL 4038223, at *6 (W.D. Okla. June 28, 2019), *Report and Recommendation adopted*, 2019 WL 4017616 (W.D. Okla. Aug. 26, 2019).  Thus, the existence of these alternative remedies, as well as these special factors, counsel against expanding *Bivens* to encompass Railey's First Amendment claim regarding interference with and destruction of his mail.  Accordingly, the Court will dismiss this claim as well.

## B.    Fifth Amendment Claims

Railey also alleges that Defendants Ebbert and Buebendorf violated his Fifth Amendment due process rights by failing to properly implement and apply the enhanced mail monitoring procedures, as well as his equal protection rights by discriminating against him based upon his classification as a sovereign citizen.

(Doc. No. 121 ¶¶ 46-65.)   For the reasons set forth below, the Court declines to extend the *Bivens* remedy to these claims.

As noted above, the Supreme Court has recognized a *Bivens* remedy for gender discrimination in violation of the Fifth Amendment.  *See Davis*, 442 U.S. at 230.  Railey's Fifth Amendment claims thus present new contexts than that present in *Davis*.  *See, e.g.*, *Zavala*, 721 F. App'x at 721 (concluding that inmate's Fifth Amendment claim regarding violations of procedural due process related to prison mail was distinguishable from *Davis*); *Vega v. United States*, 881 F.3d 1146, 1152-55 (9th Cir. 2018) (declining to extend *Bivens* to federal inmate's procedural due process claim under the Fifth Amendment); *White*, 2019 WL 3074528, at *3 (noting that prisoner's Fifth Amendment due process claim was not cognizable under *Bivens*); *Ojo v. United States*, 364 F. Supp. 3d 163, 172-73 (E.D.N.Y. 2019) (finding that pretrial detainee's equal protection claim arose in a new context for *Bivens* purposes); *Hunt v. Matevousian*, 336 F. Supp. 3d 1159, 1169 (E.D. Cal. 2018) (noting that a Fifth Amendment claim alleging a prison official's failure to provide due process presented a new context under *Bivens*); *Vanaman v. Molinar*, No. CV-17-222-TUC-JGZ, 2018 WL 4698655, at *2-3 (D. Ariz. Sept. 28, 2018) (concluding that inmate's Fifth Amendment equal protection claim presented a new context than that present in *Davis*); *Bierwiler v. Goodwin*, No. CV 16-00009-GF-BMM-JTJ, 2018

23

WL 3559134, at *3 (D. Mont. May 22, 2018) (finding that inmate's claim of racial discrimination against an employee of a private prison company presented a new context), *Report and Recommendation adopted*, 2018 WL 3549828 (D. Mont. July 24, 2018); *Leibelson v. Collins*, No. 5:15-cv-12863, 2017 WL 6614102, at *10-11 (S.D. W. Va. Dec. 27, 2017) (concluding that inmate's Fifth Amendment equal protection claims presented a new context precluding expansion of the *Bivens* remedy), *vacated in part on other grounds by Leibelson v. Cook*, 761 F. App'x 196 (4th Cir. 2019). Thus, the Court must next consider, under *Ziglar*, whether any alternative remedies exist and whether special factors counsel against extending the *Bivens* remedy. *Ziglar*, 137 S. Ct. at 1859-60.

As with Railey's First Amendment claims, the Court finds that the availability of alternative remedies and the existence of special factors leads to a conclusion that the *Bivens* remedy should not be extended to Railey's Fifth Amendment claims. As noted above, Railey could seek relief through the BOP's administrative remedy process, as he attempted to do. *See Cox*, 2018 WL 6928796, at *4; *Stratmon*, 2018 WL 3388406, at *4; *Howard*, 2018 WL 1157547, at *3; *see also Hunt*, 336 F. Supp. 3d at 1169 (noting that federal inmate could have used the BOP's administrative grievance process to address his due process claim); *Vanaman*, 2018 WL 4698655, at *4 (concluding that federal inmate could have used administrative remedy process

to address his equal protection claim).  Moreover, as other courts have recognized, special factors exist counseling against the expansion of *Bivens* to Fifth Amendment claims due process claims, such as Congress' decision to not provide a damages remedy for certain violations and the financial burden on federal agencies resulting from litigation.  *See, e.g.*, *Ojo*, 364 F. Supp. 3d at 175-76; *Hunt*, 336 F. Supp. 3d at 1169; *Vanaman*, 2018 WL 4698655, at *4.  Furthermore, "the judicial restraint exercised in cases implicating the administration of prisons" is another factor weighing against extension of the *Bivens* remedy.  *Thomas v. Paul*, 16-cv-12-SM, 2019 WL 4451349, at *5 (D.N.H. Sept. 17, 2019).  Thus, the Court will also dismiss Railey's Fifth Amendment due process and equal protection claims.

## V.    CONCLUSION

For the foregoing reasons, the Court will grant the motion to dismiss and/or motion for summary judgment filed by Defendants Ebbert, Buebendorf, Tharp, and Gass.  (Doc. No. 132).  Because Railey's claims against the Unknown Mailroom Officer are premised on the same allegations as his claims against Defendants Ebbert, Buebendorf, Tharp, and Gass, the Court will dismiss Plaintiff's claims against the Unknown Mailroom Officer pursuant to 28 U.S.C. §§ 1915A &

1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted.[7]  An

appropriate Order follows.

s/Sylvia H. Rambo
Sylvia H. Rambo
United States District Judge

Dated: September 26, 2019

---

[7] Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  If a complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," the Court must dismiss the complaint.  *See* 28 U.S.C. § 1915A(b)(1).  District courts have a similar screening obligation with respect to actions filed by prisoners proceeding *in forma pauperis* and prisoners challenging prison conditions.  *See* 28 U.S.C. § 1915(e)(2)(B) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious [or] fails to state a claim on which relief may be granted . . . .").